UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| ALABAMA CREDIT UNION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CREDIT UNION OF ALABAMA FEDERAL CREDIT UNION, formerly known as BF Goodrich Employees federal Credit Union; LOCKLEAR CHRYSLER JEEP DODGE, DON DRENNEN CHRYSLER JEEP, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | CV 05-B-1692-W |
| | ) | |
| THE CREDIT UNION OF ALABAMA FEDERAL CREDIT UNION, | ) ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADMINISTRATOR T. GLENN LATHAM; ALABAMA CREDIT UNION, | ) ) | |
| | ) | |
| Counter Defendants, | ) | |
| | ) | |
| THE CREDIT UNION OF ALABAMA FEDERAL CREDIT UNION, | ) ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADMINISTRATOR T. GLENN LATHAM; ALABAMA CREDIT UNION, | ) ) | |
| | ) | |
| Counter Defendants. | ) ) | |

## MEMORANDUM OPINION

This case is currently before the court on Alabama Credit Union League ("ACUL") Administrator Glenn Latham's ("Latham") Motion for Summary Judgment. (Doc. 68.)[1] Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Latham's Motion for Summary Judgment is due to be granted.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F. 2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144,157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. V. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* At 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in the favor of the non-moving party. *See id.* At 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every reasonable inference.  *See Brown v. City of Clewiston*, 848 F. 2d 1534, 1540 n. 12 (11th Cir. 1988).

## **STATEMENT OF FACTS**

The Alabama Credit Union Administration ("ACUA") was created by statute to administer Alabama laws regulating or otherwise relating to credit unions in Alabama. (Doc. 69 at 4.)  The Administrator of the Alabama Credit Union Administration ("Administrator") is appointed by the Governor to serve as the chief executive officer of the ACUA. (*Id.*)  As Administrator, Latham was responsible for the regulation of state-chartered credit unions in Alabama. (*Id.*)  Latham was also responsible for the safety and soundness of state-chartered credit unions. (*Id.*)

Alabama Credit Union ("ACU") is an Alabama state-chartered credit union with its principal place of business in Tuscaloosa, Alabama.  (Doc. 69 at 5.)  The Federal Credit Union of Alabama Federal Credit Union ("TCUAFCU") is a federally-chartered credit union with its principal place of business in Tuscaloosa, Alabama. (*Id.*)

TCUAFCU formerly operated under the name, "B.F. Goodrich Employees Federal Credit Union." (*Id.*)

In 2005, B.F. Goodrich Employees Federal Credit Union announced that it was changing its name to "The Credit Union of Alabama Federal Credit Union" ("TCUAFCU"). (Doc. 44 at 12.) The National Credit Union Administration ("NCUA") is the federal agency that approves name changes of federally-chartered credit unions. (Doc. 43, Ex. A.) Alonso A. Swann, III is the Regional Director of NCUA's Region III, which includes all federally-insured credit unions in Alabama. (Doc. 69 at 5.) As Regional Director, Swann determines whether to grant or deny a federal credit union's request to change its name. (*Id.*) On March 25, 2005, Swann issued a certificate granting B.F. Goodrich Employees Federal Credit Union's request to officially change its name to The Credit Union of Alabama Federal Credit Union. (*Id.*)

Latham learned of the name change on or before April 1, 2005 from his Assistant Administrator. (Doc. 69 at 6.) Latham spoke with ACU President Steve Swofford about the name change. (Doc. 89 at 4.) Latham told Swofford that he would call Tim Hornbrook, Associate Regional Director of the NCUA, to see if anything could be done about the name change. (Doc. 69 at 6.) Latham called Hornbrook and told him that the name change would cause confusion, and was not in the best interest of TCUAFCU or ACU. (*Id.*) On March 31, 2005, Latham wrote a letter to Hornbrook opposing the name change and requesting a meeting with Hornbrook and Swann. (Doc. 69 at 7.) ACU also

objected to NCU regarding the name change.  (*Id.*)  Swann took no action with regard to the name change as a result of Latham's or ACU's objections.  (*Id.*)  On May 16, 2005, Swann carbon-copied Latham on a letter to Swofford.  (Doc. 69 at 7-8.)  In the letter, Swann stated, "I have decided not to rescind the name change approval dated March 15, 2005."  (Doc. 69 at 7-8.)  TCUAFCU's name change was never rescinded as a result of Latham's or ACU's objections.  (*Id.*)

On August 9, 2005, ACU sued TCUAFCU pursuant to the Lanham Act, for unfair competition, Alabama common law trademark infringement, and violation of the Alabama Deceptive Trade Practices Act.  (Doc. 9.)  According to ACU, it has a protectable interest in the name "Alabama Credit Union," and TCUAFCU's use of its new name is likely to cause confusion.  (Doc. 9 at 3-6.)  ACU requests, among other things, that TCUAFCU be permanently restrained "from using Alabama Credit Union's mark 'Alabama Credit Union,' or variants thereof such as 'The Credit Union of Alabama,' 'Alabama Federal Credit Union,' or 'The Federal Credit Union of Alabama.'" (Doc. 9 at 11.)

In its answer, TCUAFCU asserted counterclaims against ACU and Latham.  (Doc. 5.)  TCUAFCU claims that Latham intentionally interfered with its business relations and conspired with ACU to intentionally interfere with its business relations.  (*Id.*)

## DISCUSSION

**I. Immunity**

Alabama Code § 5-17-51 provides:

> Neither the administrator, any member of the Credit Union Board nor any employee of the Alabama Credit Union Administration shall be personally liable for any acts done in good faith while in the performance of his duties as provided by law.

Ala. Code § 5-17-51. Therefore, Latham is immune from liability for any acts performed in good faith as part of his duties as Administrator.

Plaintiff's claims against Latham arise from Latham's objections to TCUAFCU's name change. (Doc. 89 at 22.) Latham objected to TCUAFCU's name change in his capacity as Administrator. (Doc. 69 at 4-6.) As Administrator, Latham is responsible for the regulation of state-chartered credit unions. (Doc. 69 at 4.) Latham is also responsible for the safety and soundness of state-chartered credit unions. (*Id.*) ACU is a state-chartered credit union. (Doc. 69 at 5.) When Latham objected to TCUAFCU's name change, he did so in the furtherance of his duty to protect the interests of ACU, an Alabama state-chartered credit union. Therefore, Latham is entitled to immunity under Ala. Code § 5-17-51 unless his objections to TCUAFCU's name change were made in bad faith.

TCUAFCU's argument that Latham acted in bad faith or beyond his authority is based on two statements by Latham. First, TCUAFCU points to Latham's testimony that he had fulfilled his responsibilities when he notified the NCUA that there was a credit

union with a name similar to TCUAFCU's. (Doc. 89 at 22.) TCUAFCU contends that Latham went beyond his authority by continuing to call the NCUA, sending a letter to the NCUA objecting to its approval of the name change, and attempting to set up a face-to-face meeting with the NCUA. (Doc. 89 at 23.) Second, TCUAFCU points to a statement by Latham that he did not believe the name change was in the best interest of ACU or TCUAFCU. (*Id.*) According to TCUAFCU, this statement was beyond his authority because Latham only has responsibility for state-chartered credit unions, and TCUAFCU is a federally-charted credit union. (*Id.*)

      TCUAFCU's evidence does not amount to bad faith. TCUAFCU does not dispute that Latham's role as Administrator was to protect state-charted credit unions. Instead, TCUAFCU apparently argues that Latham was overly zealous in the performance of his duty as Administrator. However, considering Latham's responsibility for the regulation, safety, and soundness of state-chartered credit unions, he did not act in bad faith by continuing to call the NCUA, sending a letter objecting to its approval of the name change, attempting to set up a face-to-face meeting, or stating that he did not believe the name change was in the best interest of either credit union. TCUAFCU has offered no evidence that Latham's actions were not taken in good faith while in the performance of his duties.

      Furthermore, even if Latham were not immune under Ala. Code § 5-17-51, he is entitled to state agent immunity. The Alabama Supreme Court has established a

burden-shifting process when a party raises the defense of state agent immunity. *Giambrone v. Douglas*, 874 So.2d 1046, 1052 (Ala. 2003). In order to claim state agent immunity, a state agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the state agent to immunity. *Id.* at 1052. If the agent makes such a showing, the burden then shifts to the plaintiff to show that the state agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority. *Id.* at 1052. State agent immunity exists for state employees who are "discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner." *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000). However, state agent immunity is not available for a state employee who acts "beyond his or her authority." *Id.*

As previously mentioned, Latham was responsible for the regulation, safety, and soundness of state-chartered credit unions. When he objected to TCUAFCU's name change, he was acting out of concern for the safety and soundness of ACU, a state-chartered credit union. (Doc. 69 at 9.) Therefore, Latham has demonstrated that TCUAFCU's claims arise from a function that entitled him to state agent immunity.

The burden shifts to TCUAFCU to show that Latham acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. "A State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant

8

to detailed rules or regulations, such as those stated on a checklist. " *Giambrone*, 874 So.2d at 1052 (quoting *Ex parte Butts*, 775 So.2d 173, 178 (Ala.2000)). Latham's actions do not amount to going beyond his authority under Alabama law. In objecting to TCUAFCU's name change, Latham was merely performing his duty of protecting and regulating state-chartered credit unions. Latham's actions were completely unlike those of state agents found not to be immune.[2] Because Latham is entitled to state agent and Ala. Code § 5-17-51 immunity, his Motion for Summary Judgment is due to be granted.

## II. Intentional Interference

Even if Latham is not immune, TCUAFCU has not established a claim of intentional interference with business relations. The elements of intentional interference with business relations are:

> (1) the existence of a contract or business relation;
> (2) defendant's knowledge of the existence of that relationship;
> (3) intentional interference in the relationship by the defendant;
> (4) an absence of justification for the interference; and
> (5) damage to the plaintiff as the result of defendant's interference.

*Joe Cooper & Associates, Inc. v. Cent. Life Assurance Co.*, 614 So.2d 982, 986 (Ala. 1992). In addition, a plaintiff must show "some evidence of fraud, force, or coercion on the defendant's part." *Id*. "Justification for the interference is an affirmative defense that

---

[2] *See, e.g., Smith v. Tillman*, 2006 WL 3334431 (Ala. 2006) (making a contract and not adhering to it was beyond agent's authority); *Giambrone*, 874 So.2d at 1054 (wrestling coach went beyond his authority when he wrestled and injured a high school student in violation of a rule that his supervisor had instructed him to follow); *Howard v. City of At more*, 887 So.2d 201 (Ala. 2003) (officer not entitled to immunity because he failed to follow mandatory rules and procedures prescribed for observing inmates).

must be pleaded and proved by the defendant." *Id.*

TCUAFCU's claim fails for several reasons.  First, TCUAFCU has not offered any evidence of fraud, force, or coercion.  TCUAFCU's claim also fails for the lack of any understanding or agreement that would have been completed absent Latham's alleged interference.  As part of its claim, TCUAFCU must show that Latham interfered with a business relationship between plaintiff and a third party.  *See Beachcroft Prop., LLP v. City of Alabaster*, 901 So.2d 703, 707-08 (Ala. 2004).  However, the only third party that TCUAFCU's claim could conceivably refer to is the National Credit Union Administration ("NCUA"), the party whom Latham contacted to object to the name change.  As Latham notes, TCUAFCU's relationship with NCUA has not been altered in any way by Latham's objection to the name change. (Doc. 69 at 15.)  Finally, considering Latham's role as Administrator of the ACUA, his objections to TCUAFCU's name change were justified.[3]  Therefore, TCUAFCU has not established the element of absence of justification.  Consequently, even if he is not immune, Latham's Motion for Summary Judgment is due to be granted as to TCUAFCU's intentional interference claim.

## III.  Conspiracy

Conspiracy requires a concerted action by two or more to achieve an unlawful purpose or a lawful purpose by unlawful means.  *Luck v. Primus Automotive Financial Services, Inc.*, 763 So.2d 243, 247 (Ala. 2000).  In order to prove conspiracy, a plaintiff

---

[3] Latham pleaded the defense of justification in his Answer, and proved it through evidence of his duties as Administrator. (Doc. 21 at 6.)

must show that the defendant agreed with at least one other coconspirator. *See Eidson v. Olin Corp.*, 527 So.2d 1283 (Ala. 1988). Furthermore, the agreement must be to achieve an unlawful purpose or a lawful purpose by unlawful means. *See id.*

TCUAFCU has offered no evidence that Latham and ACU agreed to achieve an unlawful purpose or a lawful purpose by unlawful means. Even if they agreed to object to TCUAFCU's name change, TCUAFCU has presented no evidence that the act of objecting to the name change was unlawful.

Furthermore, "[l]iability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy." *Willis v. Parker*, 814 So.2d 857, 867 (Ala. 2001). As discussed above, TCUAFCU's intentional interference claim fails as a matter of law. Therefore, there is no "underlying wrong" upon which to base a conspiracy claim. Consequently, even if Latham is not immune, TCUAFCU's conspiracy claim fails as a matter or law.

## CONCLUSION

Therefore, upon careful review of the record and the arguments presented in the briefs of the parties, the court concludes that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An order granting defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 13th day of August, 2007.

                                                    */s/ Sharon Lovelace Blackburn*
                                                  SHARON LOVELACE BLACKBURN
                                                  CHIEF UNITED STATES DISTRICT JUDGE