FILED

2008 Mar-31  PM 02:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ALABAMA CREDIT UNION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE CREDIT UNION OF ALABAMA** | ) | |
| **FEDERAL CREDIT UNION, formerly** | ) | |
| **known as BF Goodrich Employees federal** | ) | |
| **Credit Union; LOCKLEAR CHRYSLER** | ) | |
| **JEEP DODGE, DON DRENNEN** | ) | |
| **CHRYSLER JEEP,** | ) | |
| | ) | |
| **Defendants.** | ) | **CV 05-B-1692-W** |
| | ) | |
| **THE CREDIT UNION OF ALABAMA** | ) | |
| **FEDERAL CREDIT UNION,** | ) | |
| | ) | |
| **Counter Claimant,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ADMINISTRATOR T. GLENN** | ) | |
| **LATHAM; ALABAMA CREDIT UNION,** | ) | |
| | ) | |
| **Counter Defendants,** | ) | |
| | ) | |
| **THE CREDIT UNION OF ALABAMA** | ) | |
| **FEDERAL CREDIT UNION,** | ) | |
| | ) | |
| **Counter Claimant,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ADMINISTRATOR T. GLENN** | ) | |
| **LATHAM; ALABAMA CREDIT UNION,** | ) | |
| | ) | |
| **Counter Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This case is currently before the court on defendant The Credit Union of Alabama Federal Credit Union's ("TCUAFCU") Motion for Summary Judgment on the Grounds That "Alabama Credit Union" Is Unprotectable, (doc. 72).[1]  Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 72),[2]  is due to be denied.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F. 2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144,157 (1970).  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial.  Fed. R. Civ. P.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2] TCUAFCU has also filed a Motion for Summary Judgment on the Grounds That There Is No Likelihood of Confusion Between "Alabama Credit Union" and Marks Used by Defendant, (doc. 74).  That Motion for Summary Judgment, (doc. 74), is addressed in a separate Memorandum Opinion.

56(e); *see Celotex Corp. V. Catrett*, 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor.  *See id.* at 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every reasonable inference.  *See Brown v. City of Clewiston*, 848 F. 2d 1534, 1540 n. 12 (11th Cir. 1988).

## STATEMENT OF FACTS

Alabama Credit Union ("ACU") is an Alabama state-chartered credit union with its principal place of business in Tuscaloosa, Alabama.  (Doc. 69 at 5.)  The Federal Credit Union of Alabama Federal Credit Union ("TCUAFCU") is a federally-chartered credit union with its principal place of business in Tuscaloosa, Alabama.  (Doc. 69 at 5.)  TCUAFCU formerly operated under the name, "B.F. Goodrich Employees Federal Credit Union."  (*Id.*)  ACU has branches in Baldwin, Tuscaloosa, Pullman, Lafayette, and Madison Counties, while TCUAFCU has branches in Tuscaloosa and Pickens Counties. (Doc. 75 at 3.)

ACU has used the name "Alabama Credit Union" for more than fifty years to identify its credit union services in the Tuscaloosa, Alabama area. (Doc. 73 at 1.) For approximately the past twenty years, ACU has used the name "Alabama Credit Union" to identify its credit union services in portions of Alabama extending beyond the Tuscaloosa, Alabama area. (*Id.*).

Almost twenty credit unions doing business in Alabama use the words "Alabama" and "credit union" in their names. (Doc. 73 at 1-2.) Of those credit unions, Alabama Central Credit Union, Alabama Mental Health Credit Union, Alabama Postal Credit Union, and Alabama State Employees Credit Union were chartered before ACU. (Doc. 73 at 2.) The only credit unions with the words "Alabama" and "credit union" in their name that have branches in Tuscaloosa or Pickens County are TCUAFCU, ACU, Alabama Central Credit Union, and Alabama Mental Health Credit Union. (Doc. 86 at 4.) ACU states it has never suffered any significant confusion with Alabama Central Credit Union. (*Id.*) Alabama Mental Health Credit Union's sign reads, "AMH Credit Union." (*Id.*)

The trade association known as the "Alabama Credit Union League" was established in or around 1934, approximately twenty years prior to the establishment of ACU. (Doc. 73 at 2.) The Alabama Credit Union Administration is the agency responsible for administering the activities of credit unions in Alabama. (Doc. 73 at 3.)

4

ACU has a substantial marketing budget.  (Doc. 86 at 3.)  Since the 1960s, ACU has frequently used the University of Alabama landmark Denny Chimes as part of its logo.  (*Id.*)  Since around 2000, a primary thrust of ACU's marketing efforts has been to identify ACU as the credit union for the University of Alabama family and fans.  (Doc. 73 at 4.)  ACU has advertised itself as "The University of Alabama's credit union."  (*Id.*)

ACU's marketing emphasis varies based on the market and the competitive situation, and has included emphasizing the "quality and convenience of personal service" provided to members and positioning itself "as an alternative to the mega bank."  (Doc. 86 at 1-2.)  In providing and advertising credit union services, ACU states it makes a conscious effort to communicate the name of "Alabama Credit Union" as being the source of the credit union services.  (Doc. 86 at 5.)  ACU communicates "Alabama Credit Union" as the source of the credit union services in part by signs inside and outside of the branches, by shirts worn by most tellers and many employees when performing services for members, by internet sites, by employees stating the name when answering the telephone, and by displaying the name on account statements, checks, and other correspondence.  (Doc. 86 at 5-7.)

ACU's advertising prominently features its name.  (Doc. 86 at 8.)  As ACU has increased its marketing expenditures, it has experienced corresponding increases in assets, loans, and members.  (Doc. 86 at 9.)  ACU advertises its services in Tuscaloosa County primarily by radio, newspaper, magazine, direct mail, and billboards.  (*Id.*)

Approximately two-thirds (2/3) of ACU's marketing expense is allocated to advertising in the Tuscaloosa area.  (*Id.*)

ACU currently has approximately 36,000 members.  (Doc. 73 at 5.) Approximately two-thirds (2/3) of ACU's members live in the Tuscaloosa area.  (Doc. 86 at 5.)  Approximately 50% of ACU's members have some connection to the University of Alabama.  (*Id.*)  Over the past five years, ACU has been the second fastest growing credit union in Alabama.  (*Id.*)

In 2005, B.F. Goodrich Employees Federal Credit Union announced that it was changing its name to "The Credit Union of Alabama Federal Credit Union."  (Doc. 44 at 12.)  ACU officers and directors first learned of the name change on Sunday, March 27, 2005.  (Doc. 80 at 2.)  On the following day, ACU's lawyer, Ben Hayley, wrote a cease and desist letter to TCUAFCU protesting the new name.  (*Id.*)

On August 9, 2005, ACU sued TCUAFCU pursuant to the Lanham Act, for unfair competition, Alabama common law trademark infringement, and violation of the Alabama Deceptive Trade Practices Act.  (Doc. 9.)  According to ACU, it has a protectable interest in the name "Alabama Credit Union," and TCUAFCU's use of its new name is likely to cause confusion.  (Doc. 9 at 3-6.)  ACU requests, among other things, that TCUAFCU be permanently restrained "from using Alabama Credit Union's mark 'Alabama Credit Union,' or variants thereof such as 'The Credit Union of Alabama,' 'Alabama Federal Credit Union,' or 'The Federal Credit Union of Alabama.'"

6

(Doc. 9 at 11.)

## DISCUSSION

TCUAFCU contends that it is entitled to judgment as a matter of law because ACU's mark is unprotectable.  (Doc. 73.)  TCUAFCU contends that ACU's mark is generic, and therefore incapable of achieving protection.  Alternatively, TCUAFCU argues that ACU's mark is unprotectable because it is merely descriptive, and has not acquired a secondary meaning.

### I. WHETHER "ALABAMA CREDIT UNION" IS A GENERIC MARK

There are four categories of distinctiveness in which a mark may be classified.  In ascending order they are: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.  *Investacorp, Inc. v. Arabian Investment Banking Corporation (Investcorp) E.C.*, 931 F.2d 1519, 1522 (11th Cir. 1991).  "A generic term is typically incapable of achieving service mark protection because it has no distinctiveness."  *Investacorp*, 931 F.2d at 1522.  "A descriptive term merely identifies a characteristic or quality of a service."  *Id.*  "Because a descriptive service mark is not inherently distinctive, it may be protected only if it acquires a secondary meaning."  A suggestive term suggests the characteristics of the service, and requires an effort of the imagination in order to be understood as describing the service.  *Id.*  Because a suggestive mark is inherently distinctive, no proof of secondary meaning is required for it to be protectable.  *Id.*  An arbitrary or fanciful mark bears no relationship to the service.  *Id.*  Arbitrary or fanciful

7

marks are also inherently distinctive, and so require no proof of secondary meaning to be protectable.  *Id.*

TCUAFCU contends "Alabama Credit Union" is a generic mark.  "A term which suggests the basic nature of the service is generic."  *Id.*  Examples of generic marks are "Milk Delivery,"[3] "Convenient Store,"[4] "Brick Oven [pizza],"[5] "Ale House,"[6] "Warehouse Shoes,"[7] and "Cellular Sales."[8]  The basic nature of ACU's service is that of a credit union, not an Alabama credit union.  Therefore, "Alabama Credit Union" is not a generic mark.

A descriptive term identifies a characteristic or quality of service.  The Eleventh Circuit has noted that marks including geographic locations are descriptive:

> The personal name component of a service mark such as "Barney's" to denote a milk delivery service is also considered not inherently distinctive and hence merely descriptive. . . . Marks which are descriptive of geographic location of the source of the service are treated in the same manner as personal name marks.

*Id.* at 1522-23.  *See also Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. Appx. 252

---

[3] *Id.*

[4] *Teaching Co. Ltd. Partnership v. Unapix Entertainment, Inc.*, 87 F.Supp.2d 567 (E.D. Va. 2000).

[5] *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971 (8th Cir. 2006).

[6] *Ale House Management, Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137 (4th Cir. 2000).

[7] *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153 (7th Cir. 1996).

[8] *Cellular Sales, Inc. v. Mackay*, 942 F.2d 483 (8th Cir. 1991).

(11th Cir. 2006) (the mark "Bavaro Palace" was descriptive because Bavaro was a section of beach in the Dominican Republic, and "Palace" was a common industry name for a hotel); *Gulf Coast Commercial Corp. v. Gordon River Hotel Associates*, 2006 WL 1382072, *6 (M.D. Fla. 2006) ("Geographically descriptive marks, which 'can indicate any geographic location on earth, such as continents, nations, regions, states, cities, streets and addresses, areas of cities, rivers, and any other location referred to by a recognized name,' are a subset of descriptive marks and are treated like other descriptive marks"); *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 890 F.Supp. 1559 (N.D.Ga. 1994) (marks designating the geographic location of a business are considered descriptive); *American Television and Communications Corp. v. American Communications and Television, Inc.*, 810 F.2d 1546, 1549 (11th Cir. 1987) (affirming district court's determination that "plaintiff's name is descriptive because of the combination of generic ['Television' and 'Communications'] and descriptive ['American'] terms").[9]

Therefore, the overwhelming authority in the Eleventh Circuit and elsewhere clearly indicates that a geographic term combined with a generic term makes a descriptive

---

[9]There are also numerous cases outside the Eleventh Circuit where marks including geographic locations were considered descriptive. Many of these cases involved financial institutions similar to a credit union. *See Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785 (5th Cir.1984) (Bank of Texas was descriptive); *Winchester Fed. Sav. Bank v. Winchester Bank, Inc.*, 359 F.Supp.2d 561 (E.D. Ky. 2004) (bank's Winchester mark was descriptive); *Bay State Savings Bank v. Baystate Financial Services, LLC*, 338 F.Supp.2d 181 (D. Mass. 2004) (mark was descriptive that combined the use of "Bay Sate," a geographic term, with the generic term "bank"); *Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co.*, 739 F.Supp. 240 (E.D. Pa. 1990) ("mark combining a geographic term with a generic term like 'insurance' is descriptive").

mark.[10]   Alabama courts follow the general rule.  The Alabama Supreme Court has held that "it is also the general rule that where the geographic name has acquired a secondary meaning and signifies a certain quality of goods of a particular manufacturer or producer or dealer who has used that name, the name is protected to the extent that it is associated with that business and is attempted to be used by another in such a way as to constitute fraud." *Jefferson Home Furniture Co. v. Jefferson Furniture Co.*, 349 So. 2d 5, 7-8 (Ala. 1977).

In arguing that a geographic term combined with a generic term does not necessarily make a descriptive mark, TCUAFCU cites *In re A La Veille Russie, Inc.*, 60 U.S.P.Q.2d 1895 (T.T.A.B. 2001), and *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).   However, TCUAFCU's reliance on those cases, which did not involve geographic terms, is misplaced.  In *A La Veille Russie*, the court held that the phrase "Russian Art" was generic because Russian art is a certain type of art.  The court found that "the genus of services involved in this case is 'art dealership services in the field of Russian art,' rather than merely 'art dealership services' or, as applicant has argued, merely 'dealership services.'  *Id.* at 1897.  In other words, the term "Russian Art" was akin to the term "Credit Union" in the present case, not the full

---

[10] TCUAFCU cites *First Southern Federal Savings & Loan Assn. of Mobile v. First Southern Savings & Loan Assn. of Jackson*, 614 F.2d 71, 74 (5th Cir. 1980), where the court held that the combination of a generic term and a geographic term is not subject to protection under Mississippi law even upon proof of secondary meaning.  However, this appears to be a minority position.

mark, "Alabama Credit Union."  Similarly, in *Filipino Yellow Pages*, the term "Filipino Yellow Pages" did not contain a geographic term.  *Id.*  Instead, the telephone directory was for the Filipino community in Southern California.  Therefore, "Filipino Yellow Pages" was the type of product.  *Id.*  In the present case, the basic type of services provided by ACU are those of a credit union, not an Alabama credit union.

TCUAFCU also argues that Alabama Credit Union is generic because it shares a name with a class of credit unions (i.e., Alabama credit unions, or credit unions in Alabama).  However, this argument would apply to almost any combination of a geographic term and a generic term, and has not dissuaded courts from finding that such combinations are descriptive.  For example, Bank of Texas refers to a class of banks in Texas, but was found to be a descriptive mark.  *See Bank of Texas*, 741 F.2d 785.  *See also Winchester Fed. Sav. Bank*, 359 F.Supp.2d 561; *Bay State Savings Bank*, 338 F.Supp.2d 181.

ACU's mark consists of a geographic term and a generic term.  The word "Alabama" is descriptive of the location of ACU's services.[11]  Consequently, the court finds that "Alabama Credit Union" is a descriptive mark.

---

[11]ACU also argues that the term "Alabama" is descriptive of its connection with the University of Alabama.  Because the court finds that ACU's mark is descriptive even if "Alabama" refers only to the state, it need not address whether "Alabama" also refers to the University of Alabama.

## II. WHETHER "ALABAMA CREDIT UNION" HAS ACQUIRED A SECONDARY MEANING

Because "Alabama Credit Union" is a descriptive mark, it is protectable only if it has acquired a secondary meaning. *See Jefferson Home Furniture Co., Inc. v. Jefferson Furniture Co., Inc.*, 349 So.2d 5, 7-8 (Ala. 1977); *Investacorp*, 931 F.2d at 1522. A descriptive mark is not inherently distinctive, but may be protected if it acquires a secondary meaning. *American Television & Communications Corp. v. American Communications & Television, Inc.*, 810 F.2d 1546, 1548 (11th Cir. 1987). If a descriptive service mark acquires a secondary meaning, "it is afforded the strength of an inherently distinctive mark." *Investacorp*, 931 F.2d at 1522.

Secondary meaning is the connection in the consumer's mind between the mark and the product's producer. *Id.* at 1525. "In order to establish secondary meaning the plaintiff must show that the primary significance of the term in the minds of the consumer public is not the product but the producer." *American Television*, 810 F.2d at 1549. "If the corporate name denotes to the consumer or purchaser 'a single thing coming from a single source,' then it has acquired secondary meaning." *Id.* The Eleventh Circuit has held that a plaintiff has the burden of sustaining a high degree of proof establishing secondary meaning for a descriptive term. *Investacorp*, 931 F.2d at 1525. This requisite high degree of proof must be considered by the court when ruling on a motion of summary judgment. *Id.*

The Eleventh Circuit has outlined the standard for determining whether a mark has acquired a secondary meaning:

> Absent consumer survey evidence . . . four factors can be considered in determining whether a particular mark has acquired a secondary meaning: (1) [T]he length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's . . . business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service].

*Investacorp*, 931 F.2d at 1525.  Because ACU has not offered survey evidence, an evaluation of the factors is necessary to determine whether "the public identifies ['Alabama Credit Union'] with the producer as the source of the product."  *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984).

### A.  Length and Manner of its Use

TCUAFCU concedes that this factor weighs in favor of secondary meaning.  (Doc. 93 at 8.)  ACU has used its mark for over 50 years.  (Doc. 85, Ex. 2, ¶40.*)*  ACU has used its mark in promotional efforts on billboards, the radio, and in newspapers, and on printed materials such as checks, receipts, and account statements.  (Doc. 85, Ex. 2, ¶¶41-42; doc. 86 at 26.)  It has also displayed its mark on its outside signage, its tellers' shirts, and the Internet.  (Doc. 86 at 26.)  Therefore, this factor clearly supports a finding of secondary meaning.  *See Conagra*, 743 F.2d at 1513 (holding that the first factor supported a finding of secondary meaning when "[plaintiff] ha[d] prominently displayed [its] name on virtually all of its seafood products for over 25 years").

13

### B.  Nature and Extent of Advertising and Promotion

TCUAFCU also concedes that ACU "has a significant budget that it uses for advertising and marketing each year."  (Doc. 93 at 8.)  ACU has spent over $400,000 in marketing in each of the past three years, and has spent over $100,000 in every year since 1997.  (Doc. 85, Ex. 1, ¶6.)  ACU's advertising materials prominently features its name.  (Doc. 85, Ex. A-D.)  ACU's advertising materials focus on personal service, convenience, and its connection with the University of Alabama.  (*See, e.g.,* doc. 85, Ex. A-D.)  For example, ACU states that it is "Proudly serving The University of Alabama family."  (Doc. 85, Ex. B-D.)  ACU's logo, which consists of a drawing of Denny Chimes and the words "Alabama Credit Union," further emphasizes the connection to the University of Alabama.  ACU's logo also uses a crimson color that is almost indistinguishable from the University's crimson color.  (Doc. 85, Ex. 2, ¶32.)

While TCUAFCU concedes that ACU has spent a great deal of money and effort in advertising, it argues that "the strong attempts to associate the name with the University of Alabama call into question the extent to which consumers identify the Alabama Credit Union name with ACU, as opposed to thinking that ACU is directly affiliated with the University."  (Doc. 93 at 9.)  TCUAFCU cites *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 716 F.2d 854 (11th Cir. 1983), where the court discounted the plaintiff's evidence of advertising that focused on the "mechanical and design aspects of Brooks shoes" instead of the mark at issue, the "V design," which was an aesthetic aspect

of the shoe.  (Doc. 73 at 26.)  The court noted that the plaintiff did not offer evidence of the type of "image advertising" that would have promoted the mark in question, the "V design."  *Brooks*, 716 F.2d at 860.  Consequently, the court found that the plaintiff's advertising did not "indicate that prospective buyers of athletic shoes would associate the 'V design' on Brooks shoes with a particular source."  *Id.*  In other words, the plaintiff was trying to use evidence of its promotion of certain aspects of its product in order to protect a mark totally unrelated to those aspects.  In the present case, unlike in *Brooks*, ACU's advertising materials clearly promote the mark at issue, "Alabama Credit Union," which is also the source of the services advertised.  ACU's advertising materials prominently display its name and the nature of its services.  ACU's promotion of its connection with the University of Alabama does not necessarily detract from its promotion of itself as a particular credit union.  It is a mere marketing strategy that allows ACU to segregate itself from other credit unions through its association with the University of Alabama.  Consequently, ACU's advertising evidence supports its argument that the ACU mark has acquired a secondary meaning.  *See Conagra*, 743 F.2d at 1513 (holding that the second factor supported a finding of secondary meaning when "[plaintiff] expended over $400,000 annually in worldwide markets in its promotion of the name").

### C.  Efforts Made to Promote Connection in Public's Mind Between the Name and the Business

ACU argues that it has "consciously promoted the connection between its name and services, by literally attaching and repeating its name at every juncture in the provision of services."  (Doc. 86 at 28.)  On the other hand, TCUAFCU contends that ACU's "strong attempts to associate the name with the University of Alabama call into question the extent to which consumers identify the Alabama Credit Union name with ACU, as opposed to thinking that ACU is directly affiliated with the University."  (Doc. 93 at 9.)

The advertising evidence suggests that ACU has promoted a conscious connection between its name and its services.  ACU has used its name in large advertising campaigns, on signs outside of its branches, and on correspondence with its customers. (Doc. 85, Ex. 1 at 2.)  *See Popular Bank*, 9 F.Supp.2d 1347, 1358 (S.D. Fla. 1998) (bank's trademark acquired secondary meaning when the bank promoted its mark with $2.9 million in advertising and other promotional activities, "increased customer awareness through the signs on its buildings, newspaper articles, and the bank's web site," and included its name on correspondence with customers and potential customers).

As TCUAFCU points out, ACU has also promoted its association with the University of Alabama.  However, the main thrust of its advertising is to designate ACU's mark, "Alabama Credit Union," as "the credit union that serves UA [University of Alabama] faculty, staff, students, and alumni."  (Doc. 85, Ex. C.)  ACU's advertising

16

promotes a conscious connection between its name and its services in large part through

its association with the University of Alabama.  ACU uses its association with the

University of Alabama to distinguish itself from other credit unions, and that association

does not detract from ACU's promotion of the connection between its name and its

services.  Its advertising materials prominently display ACU's mark and clearly explain

its services.  (Doc. 85, Ex. A-D.)  Therefore, this factor also weighs in favor of secondary

meaning.

### D.  Public Actually Identifies the Name with Plaintiff

Whether the public actually identifies the name with plaintiff is the "most telling

factor" when determining whether a mark has acquired a secondary meaning.  *Conagra,*

*Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984).  Absent surveys or other

quantifiable proof, actual identification is difficult to prove." *Aloe Creme Laboratories,*

*Inc. v. Milsan, Inc.*, 423 F.2d 845 (5th Cir. 1970).  *See also Investacorp v. Arabian Inv.*

*Banking Corp.*, 722 F.Supp. 719, 723 (S.D. Fla.1989) ("consumer surveys are recognized

as the most direct and persuasive evidence of secondary meaning").

ACU has not offered a survey addressing public perception or any testimony that is

not from its own representatives.  Instead, ACU points to its advertising budget,

testimony from its own representatives, and its popularity in the area at issue.  According

to ACU, it is the second fastest growing credit union in the state, and has doubled its size

in a five year period.

TCUAFCU relies heavily on *American Television* in attempting to discount ACU's evidence of actual identification.  (Doc. 73 at 27; doc. 93 at 8-10.)  The court agrees that the lack of survey evidence in *American Television* was an important consideration in the court's determination that the plaintiff's corporate name had not acquired a secondary meaning.  *See American Television*, 810 F.2d at 1549-50.  However, TCUAFCU fails to mention one major factual distinction between the present case and *American Television*.  Neither the plaintiff nor the defendant in *American Television* conducted business with the service-buying public under its corporate name, which was the mark at issue.  *Id.* at 1547, 1549-50.  Therefore, the plaintiff's lack of survey evidence forced it to rely on speculation as to what its corporate name meant to customers, suppliers, and members of the financial community.  *Id.* at 1549.  In the present case, ACU's data regarding its popularity, customer base, advertising, and sales are relevant to the inquiry into actual identification because, unlike the plaintiff in *American Television*, ACU's mark is the name by which it conducts business with the public.  ACU simply could not have attracted customers if none of the public in the area at issue identified the ACU mark with ACU.  Nevertheless, the court is cognizant of ACU's lack of survey evidence, and that survey evidence is the most effective way of proving actual identification.

### E.  Third Party Usage

Courts have held that third party usage is relevant when determining secondary meaning.  *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985)

("Evidence of third party usage did exist and is relevant to disprove the existence of

secondary meaning"); *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 802

(9th Cir. 1970) ("Another factor militating against a finding of secondary meaning in

plaintiff's slogans is their lack of exclusivity").  While third party usage is more often

considered when determining whether a mark is generic, descriptive, suggestive or

arbitrary, or in determining the overall strength of the mark, it may also be relevant when

determining secondary meaning.[12]  *See Safeway Stores, Inc. v. Safeway Discount Drugs,*

*Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982) (noting the importance of third-party use of

the words of a mark in determining the strength of the mark).  "The proper inquiry is

whether the unauthorized third-party uses significantly diminish the public's perception

that the mark identifies items connected with the owner of the mark."  *University of*

*Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1546 n.27 (11th Cir. 1985).

Seventeen credit unions in Alabama use the words "Alabama" and "credit union"

in their names.  (Doc. 73 at 1-2.)  However, prior to TCUAFCU's name change, only

three of the nine credit unions whose names begin with "Alabama" and end with "credit

union" were in Tuscaloosa or Pickens County – Alabama Central Credit Union, Alabama

---

[12] Different courts have considered third party usage at different stages.  However, regardless of exactly where the court analyzes it, it is an important consideration. *See, e.g., Frehling Enterprise, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1336 (holding that the district court erred by failing to recognize the lack of third-party use of the mark at issue). *See also Choice Hotels Intern., Inc. v. Kaushik*, 147 F.Supp.2d 1242 (M.D. Ala. 2000) (Third-party use, secondary meaning, and the incontestability of a mark are all relevant for the second part of the test, strength of the mark in the market).

Mental Health Credit Union, and ACU.  (Doc. 86 at 30.)  *See, e.g., Chase Federal Savings and Loan Association v. Chase Manhattan Financial Services, Inc.*, 681 F.Supp. 771 (S.D. Fla. 1987) (appropriate inquiry was "the primary significance of the name Chase in the minds of *South Florida* consumers of financial products and services") (emphasis added); *University of Georgia Athletic Association v. Laite*, 756 F.2d 1535, 1545 (11th Cir. 1985) (focusing its inquiry into third-party uses on schools using the English bulldog as a mascot in the state of Georgia, and finding that the "Georgia Bulldog" is a strong mark, "at least in Georgia"); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir. 1983) (noting that the strength of a mark should be based in part upon "the amount of use of the term by others in this product and geographical area") (quoting 1 J.T. McCarthy, Trademarks & Unfair Competition § 11:24, at 401 (1973)).  Therefore, only two third-party uses have the potential to weaken ACU's mark.  *See Laite*, 756 F.2d at 1545 n.27.  Furthermore, the proper inquiry is not simply how many total third-party uses exist, but "whether the unauthorized third-party uses significantly diminish the public's perception that the mark identifies items connected with the owner of the mark."  *Id.*  Because of its distinctive additional words, it is doubtful that the existence of the Alabama Mental Health Credit Union significantly diminishes the connection in the consumer's mind between ACU and its mark.  *See Safeway*, 675 F.2d at 1165 ("[t]hird-party users that incorporate the word Safeway along with distinctive additional words . . . may not diminish the strength of the Safeway mark).

The third party uses mentioned by TCUAFCU may diminish the strength of ACU's mark. However, as a matter of law, TCUAFCU's evidence of third party uses does not overcome ACU's evidence of secondary meaning.

### *F. Conclusion*

Considering the length and manner of ACU's use of its mark, the nature and extent of its advertising and promotion, its efforts to promote a conscious connection in the public's mind between its name and its business, the extent to which the public actually identifies ACU with its mark, and the relevant third party uses, the court finds that there is an issue of material fact as to the existence of secondary meaning in ACU's mark. Therefore, TCUAFCU's Motion for Summary Judgment on the Grounds that "Alabama Credit Union" is Unprotectable, (doc. 72), will be denied.

**DONE** this 31st day of March, 2008.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

21